Good morning, sir. You may proceed. Good morning. Joe Flynn on behalf of Officer Gabriel Storz. The issue in this case is whether Ms. Karel had a constitutional right not to be taken down under these circumstances and whether that right was clearly established under the recent U.S. Supreme Court decision in White v. Pauley. The issue is not to what degree Karels actually resisted arrest as the district court found, but the legal analysis is properly focused on whether a reasonable officer in Officer Storz's position could have interpreted Karels' action as resistance. This court has corrected similar mistakes by the district court in the case of Ehlers v. Rapid City. The district court there, like the court here, relied on Rohrabau, Small v. McChrystal and other similar cases. Ehlers focused not on the injury but whether a takedown was justified because a reasonable officer could have interpreted Ehlers' behavior as noncompliant. In Ehlers, there was a nonviolent misdemeanant who, when twice ordered to put his hands behind his back, walked right past the officer without complying.  A reasonable officer in this officer's position would interpret this behavior as noncompliant. Ehlers' argument that the takedown was not appropriate because he was being arrested for a nonviolent misdemeanor is inapplicable because he at least appeared to be resisting. The court there distinguished Small v. McChrystal, which was relied on the court in our case. In that case, an officer tackled an arrestee from behind with no warning. In the Ehlers case, the officer provided two warnings to comply, and therefore the takedown did not violate a constitutional right. In our case, unlike Small, Karels was placed under arrest in order to put her hands behind her back, warned to stop resisting as she pulled away from Officer Storrs. The plaintiff even admits that from Storrs' perspective, he could have definitely felt like she was pulling away. At the very least, like Ehlers, she appeared to be resisting arrest. Notably, the district court here did not even mention the Ehlers' decision. The facts are undisputed here. The thing is that he might have felt that there was some kind of resistance, but there's still a question of whether the force was excessive, isn't there? Just because there might have been some kind of resistance doesn't mean that the Constitution was not violated. Well, this case is similar to both Ehlers and Blazick with regard to the degree of resistance. In fact, the degree of resistance here is greater than those cases. And the courts have consistently held that where an individual appears to be noncompliant and resisting physical arrest to the officer, that it is reasonable for the officer to execute a takedown under those circumstances. A certain amount of force, but the question is, you know, the seriousness of the injury is, I think, relevant in this case. And I just don't know. I mean, we have jurisdiction over questions of law. The difficulty in these kinds of cases for me is that the qualified immunity standard incorporates a certain amount of attention to the situation, the actual facts of the case. In other words, we're not allowed to cast the legal principle so broadly as we might be inclined to. In other words, the question is not whether it's clearly established under the Constitution that excessive force is unconstitutional. We know that it is. The question is whether it's clearly established in this situation that the activity was unconstitutional. And so there has to be some kind of examination of the situation. Isn't that right? That would be true. And under both the Blazek and the Ehlers case, which is precedent here, the circumstances under which the individual was taken down were similar. The claim there was that the takedown was too fast or too aggressive. But in both of those cases, the courts held that whether qualified immunity applies does not turn on the extent of the injury. In fact, quoting Chambers and Blazek, it does not, whether a takedown is reasonable, does not turn on the unpredictable consequences of the uses of force. But there the key may be the word unpredictable. Well, right. But the courts have stated in both of those cases as well that because the use of force and takedowns are so dynamic, injuries are by nature unpredictable. So the court has already considered, this court has already considered your concerns and in fact stated that takedowns are reasonable under the circumstances. I have a drunken, cursing woman. And as we all know, any of us who have any experience with law enforcement officers, drunks are the veteran of a police officer's life. Drunks are the most… To what extent are we ever permitted to take it, the force is supposed to be reasonable or a reasonable officer. To what extent can we judge the retaliatory nature of the officer's conduct? The French word I don't know. Was his amour before and been offended by this woman's language? Yeah, there's no evidence of that. I think the court has to take a look at, just like in Ehlers and Blazek, what was the, whether the individual appeared to the officer, to a reasonably competent officer to be… One of them came out of the rest of the, with clothes on and was perhaps, his very conduct exhibited the characteristics that made it reasonable for the officers to do what they did. Which case are you, I'm sorry? Blazek, the guy with the handcuffs who was jerked from his knees. No, Blazek is the case where there was a roommate when a search was being conducted who refused to sit down in response to the officer's conduct. And then, in that case, he was not told he was under arrest. He was not told, unlike this case, he was not told to put his arms behind his back, unlike this case. He was not told to stop resisting. They're simply… The woman acted like a drunk. And I hate to characterize it. An intoxicated woman, smoking a cigarette. Well… Why did she present such a threat to their safety or to their conduct as police officers that they were able to justify the force that was used? Well, drunks, by their very nature, are unpredictable and also can be physical, and as you indicated, they present some circumstances. Officers and her. Okay. Even the district court recognized and held that Storrs interpreted Carroll's behavior as physical resistance when it held, quote, Storrs felt Carroll's pull away from him, and he commanded her to stop resisting. Does Blazek really help you as much as you say it does? And here's why I say that. Blazek's pretty careful not to say that the constitutional rights were not violated in that particular case, the person who was being arrested. It does say that the right was not clearly established, but it doesn't mean that there wasn't a constitutional violation there. And so, you know, isn't that a little more limited maybe than you're suggesting? Well, I think Ehlers says there's no constitutional violation, but regardless, it does constitute precedence for this court. And, you know, in that case, the court held that the officers may forcefully twist a noncompliant suspect's arm behind his back, throw him to the ground, and handcuff him, even though the maneuver caused significant injury. And like Blazek, Carroll's was belligerent, noncooperative, not following directions. She allegedly had her arm twisted behind her back. She was taken to the ground, according to her, and sustained significant injury. So your argument would be that an officer looking at the Blazek case would not say that it's clearly established, as the Blazek court decided, that, you know, that this type of move doesn't clearly constitute excessive force. Well, it would not be, the law would not be clearly established. That's correct. So the officer here would not have noticed that his conduct was prohibited. What about, just to press you a little more, so that takes care of the if she was resisting arrest side of the ledger. But there's another side of the ledger here, which is that she argues she wasn't resisting at all, that there's at least evidence in there suggesting that there was no resistance. Now, I know that Officer Storrs would take issue with that, but we're not allowed to look at the determination by Judge Doty that there was a genuine issue of material fact on the resistance versus no resistance point. And so what do we do with that? Well, I can tell you, I just quoted from the court where the court said that she was resisting when she was pulling away from Officer Storrs. And Plaintiff, by her own admission, states that it was certainly reasonable for Officer Storrs to believe under the circumstance that she was pulling away from him. And so she admits that it's undisputed that she was pulling away from him. The record shows that. And she admits that Officer Storrs could perceive that she was pulling away from him in the court, but the court also acknowledges the same. So there are significant undisputed facts that support her resistance. In addition, we have the quote from her on page 200 of her deposition where she talks about, with regard to her right arm, she admittedly pulled her right arm away from Officer Norland. And I would submit that it's not necessary to even get to that because Officer Storrs witnessed and experienced his own resistance. But with regard to Officer Norland, there is no fact dispute there either because under Scott v. Harris, the standard is whether the court's ruling is blatantly contradicted by the record. And it is. So in addition to the resistance that Storrs experienced, she was also resistant to Is your interpretation of our case law that any resistance, however slight, gives carte blanche to the officers to take whatever action the officer thinks is necessary in the circumstances? Absolutely not. The fact that you're resistant doesn't open the door to all use of force. But when the use of force is a takedown, precedence dictates that a takedown can be employed when a reasonable officer would interpret the suspect's behavior as noncompliant. Who judges the reasonableness of the officer's conduct? Well, the courts say that when the suspect is noncompliant and resistant, that qualified immunity would apply because there's no notice to the officer that his conduct is prohibited. Could you please give me the exact language or reference to where I could find the exact language that constitutes what I think you're calling an admission on the part of the plaintiff here about reasonableness of the officer's perception? Yeah. I believe it's page 192 of her deposition transcript where she indicates that the officer would reasonably perceive that. She uses that language? Well, she said the language that she uses is that, well, I don't have the exact quote, but that her conduct, that her actions would be interpreted by Officer Storrs is pulling away. Thank you for the reference. Does it matter, to sort of switch gears here, does it matter in response to Judge Wolman's question that this is a, there is evidence in the record, and I know Officer Storrs may disagree with it, this is a non-typical, non-standard, unusual takedown. This is not something that's sanctioned by any law enforcement agency. And so maybe it kind of gets back to Judge Arnold's predictable, unpredictable point, but this is not ordinarily how officers do things. Well, I mean, this is different than other cases where, I think it's on Rohrbach where the officer admitted, Rohrbach where the officer admitted that the takedown was improper. Here there's only such allegations. In every one of these cases, these takedown cases, there's allegations that the takedown, the maneuver, the method was improper. I mean, that just goes with the territory. But here there has to be some notice that a takedown, under these circumstances, would have been prohibited, and there simply is not. So that gets to the point that you can do any kind of takedown you want, and it's fine. I mean, it kind of gets back to the earlier point. It doesn't have to be sanctioned. It doesn't have to be standard. It can be anything you want to do. Well, the officers are, it depends on the, as the courts have recognized that every situation is dynamic, here the plaintiff is claiming that her arm was lifted up high up towards her shoulder, and she was then taken down to the ground under that technique. That would be similar to blazing. The court specifically talked about the arm being brought up high to the shoulder and the takedown then occurring. So it's not that there's anything unusual about the takedown. It's that here the officer would not have noticed that anything he did was prohibited. I see that I'm out of time. Do the extent of her injuries have any effect upon her analysis? She's the lady who suffered the spiral fracture. Yeah, well, in many of these cases the injuries are significant, and the courts have held, both in Blazek and Chambers and others, that if you look to the extent of the injury, then every use of force involving significant injury would be considered to be unacceptable. The courts do not engage in that analysis because it does not turn on the unpredictable consequences of the use of force. Completely irrelevant, just to follow up, is the nature of the injury completely irrelevant, or does it just not control the analysis under our precedent, in your view? The nature of the entry to the residence? To the analysis. Does the nature of the injury just not matter, in your view, or is it just not controlling? Those are two different things. Yeah, I would submit it's not controlling, and the courts don't. If you follow Blazek and you follow Chambers and you follow Ehlers and others, the cases that we've cited, the extent of the injury is not determinative. Thank you. I'd ask that you find that qualified immunity applies and that the claims be dismissed. Thank you, Your Honor. Thank you. We'll hear from counsel for the plaintiff. Mr. . . . do you pronounce it? Dworak, Your Honor. Just like it's spelled. Yes. You may proceed, sir. Thank you. May it please the Court, Counsel, my name is Paul Dworak, and I represent Respondent Brittany Carls. I'd like to start by touching on something that both Judge Arnold and Judge Strauss talked about, and that's jurisdiction. This Court's been very clear about what its jurisdiction is in addressing qualified immunity on an interlocutory appeal. In Shannon v. Kohler, the Court says it extends only to abstract issues of the law and not to determination that the evidence is sufficient to permit a particular finding of fact. Now, that's important because Judge Doty reviewed the record and made the finding that . . . or made the determination that the evidence was sufficient upon which a reasonable jury could find every single one of the gram factors in favor of Ms. Carls. She was a nonviolent misdemeanor. That's a given. She wasn't threatening to the officers. Officer Norland testified to exactly that. She wasn't threatening to others. The only other people there were the Owenses, and the Owens stated that to the officers that very day. She wasn't trying to flee. In fact, she was at home, her kid was sleeping in the basement, and she's on the phone trying to get yet even more police to the scene. And she wasn't actively resisting. And even if she was, that resistance would be a minimal amount, de minimis or inconsequential. Now, those are fact issues. They're trying to get around that determination by saying . . . because they only contest that last one, and only part of that last one being, can you really characterize this as not active resistance? They're trying to get around that by saying Judge Doty erred by considering her subjective intent. But no . . . I think the main argument is that her admission takes the case out of the actionable, because, as I said before, the question of qualified immunity depends on the circumstances. And I think the argument is that they're saying as a matter of law, her own admission, uncontested admission, takes the case out of the actionable case. The testimony that they're referring to in trying to say that she made the admission is, counsel asked her during the deposition, well, is it possible that Officer Storrs thought you or felt that you were pulling away? And her response was, it was possible. Okay. That's the kind of language I was looking for. And what's important here, and which is why I believe Judge Doty's finding that a reasonable jury could find that there was no active resistance, is that it's not what Officer Storrs thought that matters. It's what a reasonable officer in his position would have thought that matters. And under her testimony, she's in the garage. She's got a phone in her left hand. She's smoking a cigarette in her right hand. Officer Norland's right next to her. Officer Storrs comes through the garage, tells her immediately, you're under arrest, put your hands behind your back. And before she can even respond, within a couple of seconds, he grabs her left arm and starts twisting it behind her back. She tells the officers, I have a lit cigarette in my hand. I need to put it out. And she takes a step and reaches towards the cigarette butt can in front of her. And Officer Norland helps her in that direction. Now, I believe a jury could find that under those circumstances, a reasonable officer on the scene would not have interpreted that as resistance. I mean, resistance entails that you're trying to prevent the officer from doing what it is he or she's trying to do. Is it a question of active resistance, passive resistance, and no resistance? Or is it just a question between active and passive? And there's a reason why I'm asking that. Because the Blazek case was a case of passive resistance, and so the right was not clearly established. And I guess I'm looking for your argument as, is there any evidence in the record that there was no resistance at all? Not even passive resistance. Well, yeah, I believe that telling the officer that you're going to put the cigarette out. I mean, she's telling them, based on her testimony, I'm going to put this cigarette out so I can put my hand behind my back. She's not saying I'm not putting my hands behind my back or you're not arresting me. And so I think that you would interpret that as no resistance. But going to Blazek, they like to look at Blazek and look at the resistance kind of in a vacuum. And then they consider that all takedowns are equal, which Your Honor pointed out, that's not the case. And they weren't trained to do this particular takedown, which is a violent takedown. Blazek presented a very hazardous situation for the officers involved. It was a high-risk parole officer going to check on a parolee who had already violated his parole. And when he gets to the door, he knocks on the door, somebody comes to the door, looks out the people and retreats and begins to flush the toilet. So this officer is thinking he's flushing drugs. And this court has said many times where there's drugs, there's often guns. And so he calls backup. Backup arrives, they get the apartment manager to open the door, and the two of them go in with guns drawn. And they confront Mr. Blazek, who they know is not the parolee, given that. But he won't identify himself. He won't say who he is. They don't know if he's got warrants. They don't know what his story is. They know he's a man that chose to live with a violent parolee, so you can assume that birds of a feather flock together there. But he won't sit down. He's in a towel, but they don't know what's around him. And he won't stay seated so that they can sweep the apartment for weapons and contraband. And so they take him down. And there was nothing really about the takedown in Blazek that indicated it was violent. I mean, true, he suffered a fracture. But the court made sure to point out that it was a fracture, a small chip fracture to his ankle. But wouldn't that, all of that is true, but wouldn't an officer in that circumstance at least look at the Blazek case and say, look, doing a takedown when I have passive resistance is not such clearly established law that I can't do it. Because remember, we only, according to qualified immunity, only the incompetent don't get qualified immunity. That's how it's been characterized. So it doesn't at least get you that far? No, no, because there's still the threat, and that's the threat to the officers. And that's very important in all these cases. If you look at all five of their cases that they cite, Wordish, Carpenter, Blazek, Ehlers, and Vester, all five of those cases involve serious felonies at issue or physical, serious, immediate threats to officer safety. So in those situations, if you have resistance, you can take somebody down. But not here. And that's consistent. Bear in mind, they don't have any other gram factors in their favor but a minimal amount of resistance, at most, under Storer's version of the facts. Yet they execute a takedown that is so forceful, it snaps her humerus into pieces. It was a comminuted, meaning broken in multiple places, completely displaced, so her shoulder is no longer connected by bone to her elbow, spiral fracture of her humerus. I mean, that's one of the largest bones in the body. All because of what they say is some minimal level of resistance justifies that. Well, I suppose the answer is that's an unintended consequence of action that they thought was necessary at the time. And they're asking the court to hold that as a matter of law, which the court can't do without turning Chambers on its head. And it goes back to Your Honor's question about can you consider the extent of the injuries. Chambers says the extent of the injury is certainly relevant, insofar as it's indicative of the amount of force used and the type of force used. And here we have both. Dr. Simonet, who's our orthopedic surgeon and received his training at Mayo Clinic, testified, it takes a tremendous amount of force to cause this fracture. And it takes a tremendous amount of torsion, so twisting and slamming, to cause this fracture. That's the difference between Blazek. Blazek suffered what the court called a small chip fracture to his ankle. And the court made sure to point out that it was a fracture that caused him no pain afterwards. And that he didn't know when, throughout the entire interaction with the police, he suffered his injuries. He couldn't tell you if it was from the takedown, if it was from when they got on him afterwards, or if it was from when they pulled him up and escorted him out. He couldn't tell you that. That injury, the court wasn't concerned about it because it wasn't relevant in the chamber sense. It wasn't indicative of the amount of force, and it wasn't indicative of the type of force used. They didn't take him down by his ankle. This injury was just like Montoya's. Montoya suffered that knee fracture, that tibial plateau fracture from the leg sweep. And in that case, this court said, no way can we agree with the district court that that's an unfortunate, unintended consequence. Because, importantly, they were both high-energy fractures to the exact area of the body that the officer was applying his force. And the fingerprint-shaped bruises on her fracture site are inescapable in this case. Rorba, Montoya, and Copeland all stand for the proposition that when you have a nonviolent misdemeanor who's not threatening to the officers, not threatening to others, is not trying to flee, and is engaged in, at most, a minimal level of resistance, a violent takedown like this is clearly unconstitutional. Now, Montoya, I think anybody would be hard-pressed to find a more particularized case in any 1983 action than Montoya is to this case. I mean, the calls came out, they were the same. Domestic disturbance. There were two roommates arguing. This call was the roommates reporting that they got a drunk that's being ignorant and arguing. Not a crime. Not even an uncommon occurrence on a Friday night. Two officers arrive at the scene, both in this case and Montoya's. Two male officers, they see one female who is, at the time they arrive, clearly upset and yelling. Those officers try to settle the situation down, and they don't have much luck. So they ultimately go to arrest the female for disorderly conduct. Same thing in this case. And they have two males that put her arms behind her back. One of them, in Montoya, yells out, quit resisting, quit resisting, and then they immediately resort to a violent takedown. A takedown so forceful, it fractures one of the large bones in her body. A high-energy fracture to the exact spot. And in both cases, the women needed to be rushed to the hospital and underwent emergency surgery. They were both charged with the same crimes. I think Montoya, actually, the charges were even a little bit more serious. There was assault and resisting arrest. But they were both convicted of only disorderly conduct. That case is controlling here. That's what White v. Pauley meant when it said a particularized case. We have that here. Now, I see I'm getting low on my time, but I would like to correct a misstatement of the record. Counsel says, and they say it repeatedly throughout their brief, that Ms. Carls admits to pulling her right hand out of Officer Norland's grip. But that's not what her testimony is. She was asked that twice directly during her deposition and stated it was Norland who twisted her arm behind her back and threw her to the ground. And that action, Norland's action, caused her right hand to be ripped out. Sorry, Storrs' action caused her hand to be ripped out of Norland's grip. Again, who was the one who executed the takedown maneuver? Storrs. That's what I saw. Yep. And so if you look on page 196 of her deposition, it says, and did Officer Norland maintain his grip on your right wrist area? I believe it was yanked out of his hand. It was yanked out of his hand by what action? Officer Storrs twisting and pulling up further behind my back and slamming me onto the steps. So you're saying that Officer Storrs pulled you away from Officer Norland's grasp? Correct. And to the extent that there's any inconsistencies later on, and I don't believe there are, but at this stage in the proceedings, those are certainly resolved in her favor. Unless the Court has any further questions, I ask that the Court . . . We thank you for your argument. Thank you. I ask that you affirm Judge Doty's decision. Thank you. Does Mr. Flynn have time for rebuttal? Up to you. Your call. If you'd like a minute or two to respond to anything specific, don't raise new arguments, but if you want to get this right, put it that way. With regard to passive resistance, I'd also cite the Wordish case where the Court says that . . . this Court says that in cases of passive resistance, sometimes even more force is necessary. Plaintiff Carroll talked about cases involving felonies. Blazek was not a felon. It was a roommate. Ehlers, the Court specifically said that it was a nonviolent misdemeanant involved. Also, the Montoya case couldn't be further from this case. It's a person who was simply raising their arms in consternation at the officer, and the officer then took the individual down without telling them they were under arrest, without telling them, as here, to put their arms behind their back, to stop resisting, and so forth. And also, I would just briefly respond to the allegations with regard to the resistance. She was specifically asked, did you step forward, pull your body weight on the right side of your body forward, pull your arm up and forward, and were you able to get away from Officer Norland by doing that? Do you deny that? No, I don't deny that, she says. Back one more time to . . . Page 200, our reference. Ehlers, there is a passing reference to this. The officers also reasonably considered Ehlers' free hand a potential threat. Well, she certainly had free hands, Your Honor. That's undisputed. She says she wasn't handcuffed until after she was brought down to the ground. And I would briefly quote . . . I suppose that . . . well, I won't argue the point with you, but I did . . . that struck me about Ehlers. Anyway, we thank you for your thoughtful argument. Thank you, Your Honor. The case is submitted, and we will take it under consideration.